Filed 10/27/14  Marriage of Wright CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re the Marriage of ELIZABETH L. and CHRISTOPHER J. WRIGHT. | |
| ELIZABETH L. WRIGHT,<br><br>        Appellant,<br><br>v.<br><br>CHRISTOPHER J. WRIGHT,<br><br>        Respondent. | A139626<br><br>(Napa County<br>Super. Ct. No. 26-43408) |

        Elizabeth Wright appeals from the judgment of dissolution of her marriage to Christopher Wright.  She seeks modification of a provision in the judgment awarding to Christopher "all assets" in his possession, arguing that the provision should refer only to "all disclosed assets."  We affirm.

### STATEMENT OF THE CASE AND FACTS

        The judgment of dissolution of the marriage of Elizabeth and Christopher Wright was filed on June 25, 2013.  One provision of the judgment states that Christopher will receive "[a]ll assets in his possession or control except as specified herein."[1]

        On July 17, 2013, Elizabeth filed a request for clarification of five items in what she referred to as "our marriage settlement agreement."  The first of these concerned the provision just quoted.  Elizabeth stated, "This was never ordered by Judge Ortiz.  It

_____

        [1] The corresponding provision states that Elizabeth will receive "[a]ll assets currently in her possession or control, except as specified herein."

1

should say that all <u>Disclosed</u> assets (except as specified herein) should remain in his possession. [¶] There is a high likelihood of undisclosed assets in this case, and they should not be automatically awarded to the respondent." The request for clarification indicated a hearing date of August 26, 2013. Christopher filed a responsive declaration stating that all of the provisions Elizabeth was asking to be clarified had been argued by both parties at trial and again regarding the language of the judgment, and that Elizabeth was in fact asking the court to change its rulings on these matters without offering any supporting authority. The record does not contain any documentation of further action on the request for clarification.

Elizabeth filed her notice of appeal from the judgment on August 23, 2013. Her opening brief, filed on February 21, 2014, raises the single issue of modifying the just-quoted provision to refer to "all *disclosed* assets." Christopher responded to the opening brief with a letter filed on February 28, stating that he had "no problem with the change of wording that Elizabeth Wright has asked for in her opening brief." He added, "In fact my attorney offered to stipulate this at an earlier date. I am representing myself in this matter and I hope this brings this case to a close. I have supplied Ms. Wright with every document she has ever asked for and have never hidden any assets."

On March 13, Elizabeth filed a letter stating that she appreciated the matter being settled but disputing Christopher's statements that his "concession" had been made at an earlier date and that all financial documents had been disclosed as requested. Elizabeth stated that Christopher's attorney had offered to fix his "erroneous wording," but only along with the addition of several conditions that she did not feel she could agree to. Stating that this left her no choice but to file this appeal, Elizabeth requested that Christopher reimburse her for the expenses associated with the appeal, $775 paid to this court and $444 paid to the superior court for preparation of the clerk's transcript.

Christopher responded with another letter, filed on March 21, stating that there was no need for Elizabeth to have filed the appeal because he had offered to stipulate to her request and, in any case, there was no need to be concerned with undisclosed assets because an "established set of laws" took care of this issue. Christopher stated that

Elizabeth's assets exceeded his own and reiterated that he had disclosed all assets. He requested reimbursement for his expenses occasioned by "this whole needless exercise," $700 for a court transcript and $2,000 for attorney fees.

Finally, on March 26, Elizabeth filed a letter attaching what she described as a letter from September 2013 in which Christopher's attorney addressed her concern about the wording of the judgment. The attached document is an undated and unsigned "Stipulation and Order for Amendment of Judgment and Dismissal of Appeal" drafted by Christopher's attorney. The stipulation provides for two amendments to the June 25, 2013 dissolution judgment. First, the provisions regarding assets in the possession of each party would be modified by adding "and except for community assets consisting of interests in real property or financial institution accounts that existed on the date of respective declarations of disclosure but were not disclosed." Second, a provision of the judgment concerning the division of personal property located at the family home, which stated that the parties would attempt to reach agreement and submit unresolved issues to an identified referee appointed by the court, would be modified to specify the date by which this would occur. Additionally, the stipulation stated that the present appeal would be dismissed. In her March 26 letter, Elizabeth stated that the stipulation rewrote the provision at issue on the appeal "in a much more vague manner than I had proposed," added "other items that were already adjudicated in our hearing, in hopes of having them revised," and added "sections that would have required me to give up my right to further appeal in this case." She stated that "[g]iven the amount of outstanding assets, giving up my right to further appeal would not have been prudent," but Christopher's attorney refused to eliminate this provision.

## DISCUSSION

Elizabeth contends that the provision awarding Christopher "all assets in his possession or control" was inserted into the judgment by Chrisopher's attorney unilaterally, when no such award was actually made by the court. Maintaining that Christopher repeatedly attempted to avoid disclosure of assets throughout the dissolution

3

proceedings, Elizabeth seeks modification of this provision to state that Christopher will receive "all *disclosed* assets in his possession or control except as specified herein."

In support of her argument that the trial court never made the order stated in the judgment, Elizabeth cites a specific portion of the reporter's transcript of the hearing on May 16, 2013. At the cited page, the court stated, "I don't feel comfortable making an order that any property that is currently in the possession of either party should be deemed separate property and that is the way that we should apportion community property, I am not comfortable with that."

Elizabeth takes the court's statement out of context. Immediately before this comment, the court had raised the matter of a general provision awarding assets currently in the possession and control of each party to that party as separate property. Elizabeth objected that she had requested "numerous accounts" and had not received Christopher's "consolidated UBS statement." She stated, "If something [h]as not been disclosed at this point, that upon discovery, it is transferred to the other party at the rate of 100 percent." Christopher's attorney told the court it did not need to make any rulings on omitted or undisclosed assets because established law gave either party a right to return to court if the other failed to disclose community property assets.

After brief discussion of a different point, the court asked Elizabeth if she objected to each of the parties keeping the property in their possession; she expressed concern that this was "blurry" and "too global of the 'things' " covered, and referred to prior rulings about the children's college funds and Christopher's 401K. The court noted that retirement issues were not yet being decided, then stated, "The court will make that ruling, [counsel for Christopher]. Any property, for example, the vehicle that Mr. Wright owns will remain with Mr. Wright and the remaining proceeds in the savings account will remain with the individual parties." The court's minutes state that the court ordered "[t]he property currently in possession of each party shall remain their property." Thus, there is no merit to Elizabeth's assertion that Christopher's attorney inserted a term in the judgment that the court did not in fact order.

4

Nor has Elizabeth demonstrated any error in the judgment. " 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.]" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

Elizabeth's appeal is premised on her assumption that the present wording of the judgment permits Christopher to receive as separate property any *community property* assets he failed to disclose during the dissolution proceedings. This is not the case. "Under California law, a spouse's entitlement to community property arises when the property is acquired. The interest is not altered except through judicial decree or by an agreement between the parties. Thus, property left unadjudicated by a divorce decree is subject to future litigation, the parties being tenants in common in the meantime. (*Henn v. Henn* (1980) 26 Cal.3d 323, 330.)" (*In re Marriage of Melton* (1994) 28 Cal.App.4th 931, 939; Fam. Code, § 2556.) The language appellant complains of here could not serve to transmute the character of assets that were community property at the time the judgment was entered but were not disposed of in the judgment.[2]

---

[2] Elizabeth accuses Christopher of repeatedly attempting to hide assets and points to an issue concerning $3.7 million dollars, the "fate" of which she says was never determined at trial. At trial, Elizabeth introduced as an exhibit the December 2000 account statements for three PaineWebber accounts in Christopher's name showing a total value of $3,782,823. The record before us does not reflect any testimony concerning this exhibit. Elizabeth raised the subject in her argument on spousal support, saying, "And last, but not least, we still have not resolved what happened to that 3.7 million dollars. And if, in lieu of spousal support, if he wants—I think what we have determined yesterday is that in 2000 he had 3.7 million dollars. In 2001 . . . ." The court interjected, "Okay. We are not going to go through that." Christopher's attorney then referred to the issue in his argument that Elizabeth should be required to pay Christopher's attorney fees, telling the court that Christopher would testify he told Elizabeth about the "dramatic losses . . . he suffered," they discussed her going back to work but she refused, and she "knew how well Mr. Wright had done when he had done well and had increased the value of his investments up through several million dollars and she knew full well when he lost that money, that it happened, and they had extensive

5

**DISPOSITION**

The judgment is affirmed.

Each party to bear their own costs, including attorney fees.

 

_____
Kline, P.J.

We concur:

_____
Richman, J.

_____
Stewart, J.

---

conversations about that. . . .  [¶]  [F]or her to have hired a lawyer and go through all of this extensive discovery trying to prove that Mr. Wright, ten years before they broke up, was hiding assets, also violates the principal of Family Code [s]ection 271 to adopt the reasonable settlement and litigation attitude."  Elizabeth responded that Christopher never told her about the 3.7 million dollars during the marriage; that she came across the statements and did not tell him she knew about them; and that at the same time, he was telling her they were going to "go bankrupt and be on food stamps if I didn't ask my father for an infusion of cash."  The trial court ultimately ordered each party to pay their own attorney fees.  It made no determination as to the existence or character of the funds being discussed.