28 Cal.App.4th 931 (1994)
33 Cal. Rptr.2d 761
In re the Marriage of JUDITH and WILLIAM MELTON.
JUDITH ANNE WELLS, Appellant,
v.
WILLIAM E. MELTON, Appellant.
Docket No. H010341.
Court of Appeals of California, Sixth District.
August 31, 1994.
*934 COUNSEL
J.D. Wells for Appellant Wife.
Judith M. Ebenhahn, William M. Dubbin and Patricia A. Conroy for Appellant Husband.
OPINION
PREMO, Acting P.J.
William Melton and Judith Anne Wells (formerly Melton) dissolved their marriage in 1983. They divided their community property and in March 1985, entered into a stipulation for entry of judgment and order, which settled the remaining issues. By this stipulation William agreed to make various payments to Judith. In paragraph F, under dispute here, the parties provided for division of William's future retirement benefits under the Major League Baseball Players Benefit Plan (hereafter, the Benefit Plan or the Plan.) When William elected to take his retirement benefits in 1991, the Plan had been amended, and William received much more than the dollar amount reflected in the stipulated judgment. In March 1992, Judith brought a motion for an order interpreting and implementing the judgment and/or to set it aside for extrinsic fraud or mistake. The trial court found no extrinsic fraud but, relying on its inherent equitable powers, awarded Judith half of William's pension benefits. William appeals from the order dividing his pension benefits. Judith appeals from the trial court's finding of no *935 extrinsic fraud and from the order requiring her to pay some of William's attorney fees. For the reasons stated below we affirm.

FACTS
The parties separated in 1979, and formally dissolved their marriage in 1983. The judgment of dissolution reserved jurisdiction over the division of community property and community obligations. The parties entered into a stipulated judgment resolving the remainder of the issues on March 27, 1985. By this time the Benefit Plan had been made a party to the dissolution action, but it had defaulted.
At the time they entered into the stipulated judgment, both William and Judith were represented by attorneys, and the stipulated judgment was drafted by William's attorney. In introductory paragraphs, the parties stated that all their community property had been disposed of or divided between the parties to their mutual satisfaction, except for items settled in the stipulation. The parties acknowledged that they had divided their community property equally. The stipulated judgment proceeded to divide the rest of the community property that was yet undivided and made provision for William to pay child support to Judith and to make other payments to Judith, for unexplained reasons.
Under dispute here is paragraph F of the stipulated judgment, which divides William's future pension benefits in the Benefit Plan.[1] The Plan provides for two types of benefits: a fixed benefit and a variable benefit. Judith and William agreed "that the fair and reasonable manner in which to dispose of and divide the parties' respective interests in the Benefit Plan is to require [William] to direct the Benefit Plan's Administrator ... to pay to [Judith], subject to the eligibility conditions of the Benefit Plan, the following amounts: (1) one half of the Monthly Fixed Retirement Benefit to which [William] is entitled, the whole amount being $238.00 ..., the one half amount being $119.00 ...; and (2) one half of the sum of the Monthly Variable Retirement Benefit applicable to [William]...." Exhibit A was attached and incorporated; it was a letter from the Plan administrator estimating that, according to the 1979 plan and assuming that William retired at age 45 as a class 6 member, William's monthly fixed benefit would be $238. Paragraph F continued and described the monthly variable benefit, of which Judith was entitled to half by agreement. This figure was computed using a fixed base amount and then adjusted by a factor set forth in exhibit B, another Plan document incorporated into the judgment. Judith was entitled to *936 half of this variable benefit, to be computed according to a formula set out in the judgment. The judgment authorized the issuance of a separate order directed to the administrator of the Benefit Plan to pay Judith's share directly to her, so long as William was entitled to benefits. The judgment provided: "Pursuant to this Stipulation, [William] hereby releases and assigns to [Judith] a one half interest in the Benefit Plan's Monthly Fixed Retirement Benefit (the amount of $119.00) and a one half interest in the Benefit Plan's Monthly Variable Retirement Benefit ($119.50 plus [or minus] one half of the Percentage Change in the Unit Value." Finally, the parties agreed that jurisdiction was reserved in the court "for the sole purpose of implementing the provisions of this paragraph `F' in accordance with the intent of the parties as described herein."
In 1983, William had asked the Benefit Plan to furnish a calculation of his benefits based on the plan in effect in 1979, the year the parties separated. The Plan's letter was made exhibit A to the judgment. The Plan sent Judith's attorney, still her attorney and now also her husband, a copy of the Benefit Plan in September 1984, before the parties entered into the 1985 stipulation.
William elected to begin receiving his retirement benefits in August 1991, at age 46, a year after he was first eligible. His total monthly benefit, including the amount the Plan proposed to pay Judith, was about $3,000, not the much smaller amount reflected in the stipulated judgment. Three factors accounted for this increase: first, he retired at 46 rather than at 45; second, the Plan was amended several times between 1979 and 1991, and benefits were increased; and third, the calculation of benefits in the stipulated judgment was made based on William's status as a class 6 member and he was actually a class 7 member of the Plan. Before paying benefits the Plan notified William of the error in calculations and stated that based on the plan in effect during 1979, the correct amounts for a class 7 member would have been $305, and $311 plus or minus a variable amount. The Plan proposed to pay Judith, based on the plan in effect in 1979, one-half of the monthly fixed benefit plus one-half of the earned monthly variable benefit plus investment growth of the variable benefit, amounting to $469.56 per month. The Plan proposed to pay William about $2,500 per month.
In April 1992, Judith brought a motion for an order interpreting and implementing the judgment and/or setting it aside for extrinsic fraud or mistake. Judith argued that the court should implement the judgment by respecting the parties' original intent, i.e., that both share equally in William's retirement benefits. In the alternative Judith argued that the judgment should be set aside for extrinsic fraud in that William concealed the true amount of his expected retirement benefits and misled Judith into accepting *937 a lesser dollar amount. The trial court denied the request to set aside the judgment, finding insufficient evidence of extrinsic fraud. Relying on the reservation of jurisdiction to implement the plan, and on its inherent equitable powers, the trial court determined the parties' intent was to divide the pension benefits equally. The court thus ordered the Plan to make payments to Judith until she was retroactively compensated for half the benefits paid to date, and to thereafter make equal payments to the parties. Based on need, the trial court ordered Judith to pay $1,500 of William's attorney fees.

ISSUES ON APPEAL
Although the parties have framed the issues with multiple contentions and subissues, we find there are three basic issues on appeal: the propriety of (1) the trial court's finding there was no extrinsic fraud, (2) the trial court's order dividing pension benefits equally, and (3) the ruling requiring Judith to pay William's attorney fees.

DISCUSSION

Finding of No Extrinsic Fraud
(1) After six months when relief is no longer available under section 473 of the Code of Civil Procedure for mistake, inadvertence, surprise, or excusable neglect, an otherwise valid judgment may only be set aside for extrinsic fraud or mistake. (In re Marriage of Stevenot (1984) 154 Cal. App.3d 1051, 1068 [202 Cal. Rptr. 116].) Extrinsic fraud occurs when a party is deprived of his opportunity to present his claim or defense to the court, where he was kept in ignorance or in some other manner fraudulently prevented from fully participating in the proceeding. (Ibid.) Examples of extrinsic fraud are: concealment of the existence of a community property asset, failure to give notice of the action to the other party, convincing the other party not to obtain counsel because the matter will not proceed (and it does proceed). (Id. at p. 1069.) A party's representation of the value of an asset, favorable to himself, does not constitute extrinsic fraud. (Id. at p. 1070.) Extrinsic mistake involves the excusable neglect of a party. (Kulchar v. Kulchar (1969) 1 Cal.3d 467, 471 [82 Cal. Rptr. 489, 462 P.2d 17, 39 A.L.R.3d 1368].) When this neglect results in an unjust judgment, without a fair adversary hearing, and the basis for equitable relief is present, this is extrinsic mistake. (Ibid.) Reliance on an attorney who becomes incapacitated, or incompetence of the party without appointment of a guardian ad litem, are examples of extrinsic mistake. (Id. at pp. 469-470.)
(2) Fraud is intrinsic and not a valid ground for setting aside a judgment when the party has been given notice of the action and has had an opportunity to present his case and to protect himself from any mistake or fraud of *938 his adversary, but has unreasonably neglected to do so. (In re Marriage of Stevenot, supra, 154 Cal. App.3d at p. 1069.) Such a claim of fraud goes to the merits of the prior proceeding which the moving party should have guarded against at the time. Where the defrauded party failed to take advantage of liberal discovery policies to fully investigate his or her claim, any fraud is intrinsic fraud. (Ibid.)
(3) As the trial court ruled, William's conduct in the instant case did not amount to extrinsic fraud. Extrinsic fraud is most commonly found when one party, not represented by counsel, is persuaded by the other party or the other party's attorney to enter into an inequitable agreement. In this case both William and Judith were represented. William did not conceal the existence of the Benefit Plan. William did, however, misrepresent the present value of his future pension benefits, with the assistance of the Plan administrator. However, Judith's attorney had a copy of the Plan and could have discovered, in the exercise of reasonable diligence, that the Plan was amended by increasing benefits from time to time. Furthermore, the Plan was a party to the dissolution action, and thus subject to discovery. Judith's counsel could have conducted discovery on the Plan, and he could have found out what William's projected benefits would be.
The essence of extrinsic fraud is one party's preventing the other from having his or her day in court. In this case William did not prevent Judith from discovering the true value of his retirement benefits. After separation, a party may take a position on the value of a community asset that is favorable to himself. Although what occurred here may be sharp practice, it does not amount to extrinsic fraud. The trial court's finding on this issue was correct.

Division of Pension Benefits
The judgment expressly reserved jurisdiction in the court to implement paragraph F "in accordance with the intent of the parties as described herein." The trial court found that in order to implement the pension division provision it first had to interpret the judgment. In interpreting the judgment, the court found that the parties intended an equal division of the pension benefits. The court found that the word "half" was controlling, and that the dollar amounts in the judgment were illustrative. The trial court also relied on its inherent equitable powers. (4a) We think the trial court exceeded the narrow jurisdiction reserved for it in the stipulated judgment.
The trial court was empowered to "implement" the pension division portion of the judgment. It was not, however, empowered to rewrite the judgment for the parties. We find the trial court erred in effectively doing so.
*939 (5) If the pension had been omitted from the dissolution action altogether, the supported spouse could bring a civil action later to divide the asset. Such an action would not be barred by res judicata. Under California law, a spouse's entitlement to community property arises when the property is acquired. The interest is not altered except through judicial decree or by an agreement between the parties. Thus, property left unadjudicated by a divorce decree is subject to future litigation, the parties being tenants in common in the meantime. (Henn v. Henn (1980) 26 Cal.3d 323, 330 [161 Cal. Rptr. 502, 605 P.2d 10].) "This rule applies to partial divisions of community property as well as divorces unaccompanied by any property adjudication whatsoever." (Ibid.)
(4b) In the instant case William's entire pension was earned and vested during the marriage. For good faith reasons outlined above, only a portion of William's pension was explicitly divided by the stipulated judgment. The remainder of William's pension, the bulk of it actually, was left undivided. We see no reason why the omitted portion of William's pension should not be treated the same way as an omitted asset. We therefore remand the case to the trial court to hold a hearing to determine how to divide the omitted portion of William's pension, and to amend the judgment in the case accordingly.

Attorney Fees Award
(6) In her appeal Judith contends that the trial court erred in awarding attorney fees to William because there was insufficient evidence and the application for fees and the income and expense declaration were not properly verified, i.e. they were signed by William's attorney. Judith acknowledges that a request for attorney fees is addressed to the trial court's sound discretion, and that the trial court's determination will not be disturbed on appeal absent a clear showing of abuse. (In re Marriage of Sullivan (1984) 37 Cal.3d 762, 768-769 [209 Cal. Rptr. 354, 691 P.2d 1020].)
Code of Civil Procedure section 446 permits an attorney to verify a pleading for his or her client when the client is absent from the county in which the attorney has his or her office. When the attorney signs the pleading, it is not considered as establishing the truth of the facts alleged therein. Improper verification, however, is an objection that must be raised in the trial court and is waived if it is not. (Zavala v. Board of Trustees (1993) 16 Cal. App.4th 1755, 1760-1761 [20 Cal. Rptr.2d 768].)
In this case William's attorney represented to the court that William would swear under penalty of perjury to the information on the income and *940 expense declaration, except that a typographical error had been made with respect to his income. Judith's attorney did not object to the income and expense declaration on the ground it was not properly verified, so the objection was waived. While Judith's attorney argued that William was voluntarily unemployed, no competent evidence of William's earning capacity was introduced. Substantial evidence supports the trial court's award of $1,500 in attorney fees to William. We find no abuse of discretion here. (In re Marriage of Sullivan, supra, 37 Cal.3d at p. 769.)

DISPOSITION
The order dividing pension benefits is reversed, and the case is remanded for proceedings consistent with the views expressed in this opinion. In all other respects, the judgment is affirmed. Each party to bear his or her own costs and attorney fees on appeal.
Wunderlich, J., and Mihara, J., concurred.
A petition for a rehearing was denied September 28, 1994.
NOTES
[1] William was retired from professional baseball before the marriage ended, but was not eligible to receive retirement benefits until he reached age 45.