[No. G032753. Fourth Dist., Div. Three. Sept. 2, 2004.]

In re Marriage of RICHARD J. and BARBARA A. SIMUNDZA.
RICHARD J. SIMUNDZA, Respondent, v.
BARBARA A. SIMUNDZA, Appellant.

COUNSEL

Nancy Bennett Bunn for Appellant.

Ralph T. Evans for Respondent.

OPINION

FYBEL, J.—

## INTRODUCTION

Barbara A. Simundza and Richard J. Simundza[1] entered into a stipulated marital dissolution judgment under which Barbara agreed to accept the sum of $200 from Richard's monthly pension benefit for 12 years following his

---

[1] We use the parties' first names to avoid confusion and intend no disrespect. (*Nairne v. Jessop-Humblet* (2002) 101 Cal.App.4th 1124, 1126, fn. 1 [124 Cal.Rptr.2d 726].)

retirement. Barbara contends the value of the pension benefit has increased since the parties entered into the stipulated judgment in 1983, and thus the pension benefit was only partially divided in the judgment. Relying on *In re Marriage of Melton* (1994) 28 Cal.App.4th 931 [33 Cal.Rptr.2d 761] (*Melton*), she filed a motion to further divide the pension benefit which she argued constituted a partially omitted asset within the meaning of Family Code section 2556.[2] (All further statutory references are to the Family Code.) The trial court denied her motion and she appealed.

■ We conclude there is no partially omitted asset within the meaning of section 2556 because nothing in the stipulated judgment suggested Barbara was entitled to anything more than the agreed-upon flat amount. *Melton, supra,* 28 Cal.App.4th 931 is factually and materially distinguishable from this case. In *Melton*, the stipulated judgment provided the wife would receive, inter alia, one-half of the value of a fixed pension benefit and specified that value equaled a monthly amount of $119. (*Id.* at p. 935.) When the husband began to receive his monthly pension benefit, the value of the benefit was significantly higher than it had been estimated to be at the time the stipulated judgment was entered. (*Id.* at p. 936.) The appellate court concluded the amount constituting the difference between the actual benefit value and the lower estimated benefit value had not been divided in the stipulated judgment and thus constituted an omitted asset to be divided by the trial court. (*Id.* at p. 939.) Here, the parties agreed Barbara would receive a flat amount of Richard's pension benefit. We therefore affirm.

## BACKGROUND

Richard and Barbara were married in June 1967. They had two children, who are now adults. Richard filed a petition for dissolution of the marriage in April 1983. In May 1983, Richard filed an interlocutory judgment of dissolution of marriage to which was attached the parties' stipulation resolving various custody, support, community debt, and community property issues, including the division of Richard's pension benefit.[3] The stipulated judgment included the following provision pertaining to the pension: "5. *PENSION*

---

[2] Family Code section 2556 provides, "In a proceeding for dissolution of marriage, for nullity of marriage, or for legal separation of the parties, the court has continuing jurisdiction to award community estate assets or community estate liabilities to the parties that have not been previously adjudicated by a judgment in the proceeding. A party may file a postjudgment motion or order to show cause in the proceeding in order to obtain adjudication of any community estate asset or liability omitted or not adjudicated by the judgment. In these cases, the court shall equally divide the omitted or unadjudicated community estate asset or liability, unless the court finds upon good cause shown that the interests of justice require an unequal division of the asset or liability."

[3] The attachment to the interlocutory judgment of dissolution of marriage was not entitled "stipulation," but was proposed by Richard and signed by Barbara below the phrase "APPROVED AS TO FORM AND CONTENT." In their appellate briefs, Richard and Barbara agree they stipulated to the terms of the judgment.

*PLAN* [¶] The Court further orders that, upon Petitioner retiring from United Airlines, Petitioner to pay to Respondent the sum of $200.00 per month for a period of twelve years out of his pension plan with United Airlines." The interlocutory judgment also stated, "Jurisdiction is reserved to make such other and further orders as may be necessary to carry out the provisions of this judgment." The trial court approved the interlocutory judgment, and a final judgment of dissolution of marriage was entered October 25, 1983.

Twenty years later, in April 2003, Barbara filed a motion in which she requested that "the court divide an asset not divided at the time of our judgment of dissolution of marriage, namely, the community interest in the United Air Lines retirement plan earned by [Richard] during our marriage. To accomplish that division, I request that a QDRO [qualified domestic relations order] be filed." In support of her motion, Barbara filed a declaration stating (1) at the time of the interlocutory judgment of dissolution of marriage, she could not afford an attorney and wanted to dissolve the marriage on friendly terms; (2) Richard hired a paralegal to "draw up paperwork"; (3) "[w]ith respect to the pension earned by United Air Line[s] ('United') by Richard during the marriage, we were informed by the paralegal that the pension was community property"; (4) Richard wrote to his employer and was informed the value of the plan would be "around $400.00 per month when Richard retired"; (5) Barbara was awarded $200 each month to be paid by Richard for 12 years; (6) she could "no longer recall why the number of twelve years was used unless that was the number of years Richard had worked for United Air Lines during the marriage"; (7) "[b]ased on [Barbara's] belief that the contents of the judgment represented the division of community property required by law, [Barbara] approved the judgment as to form and content"; and (8) she did "not remember agreeing to take less than [Barbara and Richard] thought [Barbara] was entitled to from the pension or anything else." Barbara stated the $200 award contained in the stipulated judgment was only part of her interest in the pension benefit and the parties intended to equally divide that community interest. She further stated, "[t]he amount in excess of $200.00 per month has never been determined or divided. Now that Richard is eligible to retire, I request that the court award to me my community interest in the retirement plan."[4]

---

[4] Although Barbara's moving papers failed to expressly say so, it appears the value of Richard's pension benefits significantly exceeded the estimate provided by Richard's employer at the time the parties entered into the stipulated judgment. In the opening brief, Barbara states in a footnote, "Richard worked 32 years during which time he was married to Barbara for 12 years. The community interest is 37.5%, or 18.5% to each party. His award of over $3,000 monthly is approximately $575.00 monthly for Barbara. Had he ceased pension plan participation when the parties separated, Barbara would have been entitled to slightly more than $200.00 monthly." Neither the parties' briefs nor the appellate record provides any further information on the amount Barbara contends is her share of Richard's monthly pension benefit.

Richard opposed Barbara's motion. He filed a declaration stating (1) the $200 per month "was arrived at from the figure that [he] got from a call to [his] employer's pension clerk in . . . 1982" who told him "the pension was worth $400/month"; (2) Richard and Barbara gave that amount to the paralegal; (3) Richard and Barbara thought 12 years "would be fair because [Richard] had been building up the pension for 12 years prior to [their] separation"; and (4) Richard and Barbara "had give and take on a few things in the settlement. She took the newer & better car, a grand piano, most of the furniture and very little child support ([Richard] had the kids)."

Following a hearing, the trial court denied the motion, stating, "It's obvious that the judgment was entered into by two people who decided to act as their own lawyers which is sort of unfortunate . . . . I have a fair reading of this, and paragraph 5 talks about the pension plan, and number 6 talks about the life and retirement insurance policy, and it's obvious to me from that that these parties in the limited legalese that they had at their command bargained for a disposition of the pension plan as well as the private retirement insurance policy, and made an agreed judgment. Whatever negotiations there were, I was not unaware of the fact that the husband wound up with custody. And as you commented, counsel, there's a number of reasons why people get into these plans or into these kinds of judgment negotiations which aren't necessarily set forth with any specificity in the judgment, and I don't really feel compelled to look through 20 years later as to what parties had in mind when they signed off on this judgment. It's final, it's unappealed, no motion to set it aside or do anything was done in 20 years, and I don't think this is an omitted asset at all. And even if I did, I don't have the jurisdiction to do anything about it, because it's a property division and at this point there's no reservation to do anything about anything in here. Therefore, I don't think that even if I thought that this was an omitted asset, which I find is not, the parties thought about it, knew about it, and bargained for it, and if she took less than what she was entitled to, that's part of the bargain, I guess."

Barbara appealed.

## DISCUSSION

This appeal raises the following single issue: Did the stipulated judgment fail to resolve any portion of the parties' interests in Richard's pension benefit, resulting in a partially omitted asset to be divided according to section 2556? The answer to this question is no.

Barbara contends that while the stipulated judgment determined she would be entitled to $200 of Richard's monthly pension check, it did not divide the remaining value of Richard's monthly pension check and this remainder

constituted an omitted asset. Citing *Melton, supra,* 28 Cal.App.4th 931, which Barbara describes as "virtually identical" to the facts of this case, she argues the trial court erred by denying her motion under section 2556 to divide this partially omitted asset between the parties.

"Marital settlement agreements incorporated into a dissolution judgment are construed under the statutory rules governing the interpretations of contracts generally." (*In re Marriage of Iberti* (1997) 55 Cal.App.4th 1434, 1439 [64 Cal.Rptr.2d 766].) "The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. [Citations.] When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible. [Citation.] 'The words of a contract are to be understood in their ordinary and popular sense.' " (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955 [135 Cal.Rptr.2d 505] (*Founding Members*).)

■ Barbara does not argue any other agreement exists between the parties that must be considered part of the stipulated judgment. Although extrinsic evidence is admissible to prove a meaning to which the contract is reasonably susceptible (*Founding Members, supra,* 109 Cal.App.4th at p. 955, 135 Cal.Rptr.2d 505), Barbara does not contend the trial court failed to admit or consider any extrinsic evidence in construing the terms of the stipulated judgment, or competent extrinsic evidence considered by the court was in conflict. "When no extrinsic evidence is introduced, or when the competent extrinsic evidence is not in conflict, the appellate court independently construes the contract." (*Ibid.*)

Barbara's declaration filed in support of her motion stated the parties' "intent was to equally divide that community interest." But, "California recognizes the objective theory of contracts [citation], under which '[i]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation' [citation]. The parties' undisclosed intent or understanding is irrelevant to contract interpretation." (*Founding Members, supra,* 109 Cal.App.4th at p. 956.)

In her opening brief, Barbara frames her argument as follows: "The court abused its discretion in refusing to follow the law in a case with facts virtually identical to the [*Melton, supra,* 28 Cal.App.4th 931] case. This case is not about finality of judgments, reservation of jurisdiction, trying to guess the intention of the parties, who got custody of the children, *laches* or any equitable argument. It is about an order that awarded one party $200.00 per month for twelve years from a pension plan payable for life, and awarded no community interest to the other party at all. The result is not only unreasonable

but it is unfair to a party who gets $200.00 for twelve years rather than $575.00 for her lifetime."[5] (Fn. omitted.)

We therefore turn to *Melton, supra,* 28 Cal.App.4th 931, 935, which involved the interpretation of a stipulated marital dissolution judgment. In *Melton,* the judgment contained a provision resolving both the husband's future fixed benefit and future variable benefit under his former employer's pension benefit plan. (*Ibid.*) The judgment provided the parties agreed " 'that the fair and reasonable manner in which to dispose of and divide the parties' respective interests in the Benefit Plan is to require [the husband] to direct the Benefit Plan's Administrator . . . to pay to [the wife], subject to the eligibility conditions of the Benefit Plan, the following amounts: (1) one half of the Monthly Fixed Retirement Benefit to which [the husband] is entitled, the whole amount being $238.00 . . . , the one half amount being $119.00 . . . ; and (2) one half of the sum of the Monthly Variable Retirement Benefit applicable to [the husband] . . . .' " (*Ibid.*)

In *Melton, supra,* 28 Cal.App.4th at page 935, the judgment incorporated an exhibit containing a letter from the pension plan administrator estimating, according to the plan's terms and assuming the husband retired at age 45 as a class 6 member, the husband's monthly fixed benefit would be $238. It further provided the wife would be entitled to half of the monthly variable retirement benefit that was to be computed according to a formula set out in the judgment. (*Id.* at pp. 935–936.) The judgment also provided jurisdiction was reserved in the court " 'for the sole purpose of implementing the provisions of this paragraph "F" in accordance with the intent of the parties as described herein.' " (*Id.* at p. 936.)

In *Melton, supra,* 28 Cal.App.4th 931, 936, at the time the husband elected to begin receiving his retirement benefits, he was one year older than contemplated by the judgment, the plan had been amended several times since the judgment, and the husband was a class 7 member of the benefit plan, not a class 6 member. Consequently, the amount of the husband's total monthly benefit was much higher than contemplated in the judgment. (*Ibid.*) The wife brought a motion for an order interpreting and implementing the judgment and/or setting it aside for extrinsic fraud or mistake. (*Ibid.*) The wife argued the court should implement the judgment by respecting the parties' original intent that they both equally share in the retirement benefits. (*Ibid.*) The trial court denied the wife's request to set aside the judgment

---

[5] Notwithstanding the assertion in Barbara's declaration that the parties' reliance on the information received from Richard's employer significantly undervaluing his pension benefit resulted in the parties agreeing on the $200 a month figure, Barbara has not moved to set aside the judgment based on a theory of fraud or mistake, and does not argue fraud or mistake on appeal.

because there was insufficient evidence of extrinsic fraud. (*Id.* at p. 937.) "Relying on the reservation of jurisdiction to implement the plan, and on its inherent equitable powers, the trial court determined the parties' intent was to divide the pension benefits equally. The court thus ordered the Plan to make payments to [the wife] until she was retroactively compensated for half the benefits paid to date, and to thereafter make equal payments to the parties." (*Ibid.*)

The appellate court affirmed the trial court's finding there was no extrinsic fraud. (*Melton, supra,* 28 Cal.App.4th at p. 938.) The appellate court, however, reversed the trial court's resolution of the division of pension benefits issue, stating, "The judgment expressly reserved jurisdiction in the court to implement paragraph F 'in accordance with the intent of the parties as described herein.' The trial court found that in order to implement the pension division provision it first had to interpret the judgment. In interpreting the judgment, the court found that the parties intended an equal division of the pension benefits. The court found that the word 'half' was controlling, and that the dollar amounts in the judgment were illustrative. The trial court also relied on its inherent equitable powers. We think the trial court exceeded the narrow jurisdiction reserved for it in the stipulated judgment. [¶] The trial court was empowered to 'implement' the pension division portion of the judgment. It was not, however, empowered to rewrite the judgment for the parties. We find the trial court erred in effectively doing so. [¶] If the pension had been omitted from the dissolution action altogether, the supported spouse could bring a civil action later to divide the asset. Such an action would not be barred by res judicata. Under California law, a spouse's entitlement to community property arises when the property is acquired. The interest is not altered except through judicial decree or by an agreement between the parties. Thus, property left unadjudicated by a divorce decree is subject to future litigation, the parties being tenants in common in the meantime. [Citation.] 'This rule applies to partial divisions of community property as well as divorces unaccompanied by any property adjudication whatsoever.' [Citation.] [¶] In the instant case [the husband]'s entire pension was earned and vested during the marriage. For good faith reasons outlined above, only a portion of [the husband]'s pension was explicitly divided by the stipulated judgment. The remainder of [the husband]'s pension, the bulk of it actually, was left undivided. We see no reason why the omitted portion of [the husband]'s pension should not be treated the same way as an omitted asset. We therefore remand the case to the trial court to hold a hearing to determine how to divide the omitted portion of [the husband]'s pension, and to amend the judgment in the case accordingly." (*Id.* at pp. 938–939.)

*Melton, supra,* 28 Cal.App.4th 931, is factually distinguishable from this case on a material basis. The judgment in *Melton* provided the wife was entitled to " 'one half interest' " in the plan's monthly fixed benefit equaling

$119. (*Id.* at p. 936.) At the time the husband began to receive benefits under the plan, a one-half interest in the monthly fixed benefit equaled a significantly greater number than $119. (*Ibid.*) The appellate court concluded the trial court exceeded its jurisdiction by rewriting the parties' judgment in determining the " 'one half interest' " term as controlling and the $119 term as merely illustrative. (*Id.* at p. 938.)

Here, the language of the stipulated judgment did not include inconsistent terms because the pension benefit provision simply required that Richard "pay to [Barbara] the sum of $200.00 per month for a period of twelve years out of his pension plan with United Airlines." Nowhere does the pension benefit provision state the parties agreed Barbara was entitled to any percentage of the value of Richard's pension benefits. Because *Melton, supra,* 28 Cal.App.4th 931, is so materially distinguishable on its facts from this case, we do not need to decide whether we agree or disagree with *Melton.* We observe the reasoning in *Melton* depends upon the assumption the value of pension benefits always increases over time—an assumption that may not always be correct.

Significantly, other provisions contained in the stipulated judgment in this case allocated a percentage interest to a party, without assigning a specific numeric value, in the process of dividing certain types of community property. For example, the provision immediately following the pension benefit plan provision stated as follows: "6. *LIFE AND RETIREMENT INSURANCE POLICY* [¶] The Court further orders that, upon [Richard]'s retirement at United Airlines, [Richard] to pay to [Barbara] one-half of his retirement policy through John Hancock, payable monthly." Another example is found under the title "7. *PERSONAL INJURY SETTLEMENT*" and stated: "The Court further orders that, [Barbara] to pay to [Richard] one-half of any settlement she receives from her personal injury lawsuit." Therefore, the parties knew how to allocate to Barbara one-half or another percentage interest in Richard's pension benefit, but did not do so in the stipulated judgment.

Barbara contends the division of the pension benefit provided in the stipulated judgment is incomplete on its face. While Barbara is awarded $200 per month, she argues, the stipulated judgment is silent as to Richard's share, and how any remainder is to be addressed. The stipulated judgment provides Richard is "to pay to [Barbara] the sum of $200.00 per month . . . out of *his* pension plan . . . ." (Italics added.) Interpreting the words of this provision in an ordinary sense, it is evident Richard gets to keep what is left of his monthly pension check after paying Barbara $200 per month. Nothing in that provision or any other provision in the stipulated judgment suggests otherwise. Therefore, the stipulated judgment completely resolved the division of

the pension benefit, and thus the pension benefit is not a partially omitted asset within the meaning of section 2556.

Barbara acknowledges that the parties had other options available to them in determining how to divide the pension benefit, such as by dividing by a formula and deferring a determination of an exact dollar valuation until the pension benefit is actually received. But the parties here did not choose to divide the pension benefit that way.

Therefore, the trial court did not err by denying Barbara's motion to divide an alleged partially omitted asset.

## DISPOSITION

The postjudgment order is affirmed. Respondent shall recover his costs on appeal.

Bedsworth, Acting P. J., and Aronson, J., concurred.