Filed 11/12/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Marriage of DONN MICHAEL SCHU, JR. and GENISE SCHU. | 2d Civil No. B251636<br>(Super. Ct. No. 1342880)<br>(Santa Barbara County) |

DONN MICHAEL SCHU, JR.,

   Respondent,

v.

GENISE SCHU,

   Appellant,

When does "until" begin?  Here we conclude it begins when "when" begins.

A marital settlement agreement provides that the trial court will reserve jurisdiction to award long-term spousal support "until" the wife is released from prison. Wife files a motion for support five weeks before her release, set to be heard three days after her release.  The hearing is twice continued, once because husband is out of the country, and once so he can obtain wife's vocational examination.  The trial court concludes that its jurisdiction expired and issues an order denying spousal support to wife.  Wife appeals the order.  We reverse.

FACTUAL AND PROCEDURAL HISTORY

Genise Schu (Genise) and Donn Michael Schu, Jr. (Mike) were married in 1986 and separated 23 years 8 months later in 2010.[1] They have three adult children.

In 2010, a court sentenced Genise to six years in prison after conviction of seven counts of unlawful sexual intercourse with a minor under 16 years of age and three counts of oral copulation of a minor under 18 years of age. (Pen. Code, §§ 261.5, subd. (d), 288a.) Mike filed a petition for legal separation on April 7, 2010. Three days later, Genise began serving her prison term.

The trial court ordered Mike to pay Genise temporary spousal support in the amount of $500 per month from April 7, 2011, until death, remarriage, or further order. In September, Mike amended his petition to request dissolution.

On July 13, 2012, Genise was transported from prison to court to attend a settlement conference. She and Mike reached an agreement. The settlement master recited the terms of the agreement on the record. Both parties were present with counsel. They confirmed that they heard, understood, and agreed to the terms after consulting with counsel. Mike's attorney agreed to prepare a stipulation for judgment.

The parties agreed to divide their assets, which had a value of about $2 million and included Mike's pension plans and the family home. Genise received about $914,000 in assets, including $285,000 in cash when Mike sold the home.

In regard to long-term spousal support, the parties agreed "to deal with that issue *when* the wife is released from prison." (Italics added.) The trial court stated, "They are divorced as of today's date. [T]he issue of spousal support is reserved." Genise's counsel added, "There will be a motion to modify support filed at the appropriate time." There was no mention of a particular date or event upon which the reserved jurisdiction would terminate. The minute order simply stated that "[s]pousal support is reserved."

---

[1] We use the first names of the parties for clarity and intend no disrespect.

Mike's counsel prepared the first draft of the stipulation for judgment, and counsel exchanged correspondence until they reached agreement. Genise signed the stipulation for judgment in December, Mike signed it in January, and the court clerk gave notice of entry of judgment on February 7, 2013, nine weeks before Genise's release from prison on April 14. The clerk served notice of entry of judgment one week later.

In its final form, the stipulated judgment provided: "Husband will continue to pay Wife spousal support in the amount of $500.00 on the first (1st) of each month so long as Wife remains incarcerated, further agreement or until further order of the Court. [¶] The Court in the parties' dissolution action will reserve jurisdiction to award long-term spousal [support] *until* Wife's release from incarceration, either parties' death, the remarriage of Wife, the cohabitation of Wife, or modification or termination by further order of the Court, whichever occurs first." (Italics added.) It provided that the parties had consulted with counsel, understood the terms, and did not act under duress or coercion.

Genise filed a request for long-term spousal support on March 8, 2013, five weeks before her release from prison and four weeks after notice of entry of judgment. The hearing was initially set for April 17, three days after her release.

Mike was out of the country when Genise was released. Genise was not able to serve him. The trial court continued the hearing to May 31. When Mike returned, the parties stipulated to an order continuing the hearing to July 26 so that Mike could obtain a vocational examination of Genise to evaluate her earning capacity. The stipulation also provided that Mike would increase his temporary support payment until the hearing from $500 to $1,500 per month and that he would receive a credit for this "against any spousal support ordered pursuant to further agreement of the parties or order of the Court." Mike filed a motion to determine the location of the vocational examination. The examination occurred on May 31, 2013.

In July, three months after Genise had been released from prison, Mike first argued that the trial court lost jurisdiction to conduct the hearing. He also argued that (1)

3

the trial court should deny "support to a child molester" based on "a very recent unpublished appellate case"; (2) Genise could support herself because she received assets worth $914,000 in the property division, including $285,000 in cash from the sale of the home; and (3) the vocational evaluation demonstrates Genise has the capacity to earn $39,000 to $55,000 annually within three years; and he should not support Genise for the three-year interim because she brought her work limitations upon herself. Mike submitted the vocational examiner's report in support.

The vocational examiner's report states that Genise has a high school level education, extensive volunteer service in schools, but no paid employment since 1990, and a criminal history that must be disclosed to an employer. Genise is a registered sex offender. During her three-year parole term, she cannot be near children under the age of 18, cannot travel more than 50 miles from her home, and must be 100 yards from school settings and parks. Any employment or volunteer work must be located between Oxnard and Santa Ynez and approved by her parole officer. Genise reported to the vocational examiner that she was living on her share of the proceeds from the sale of the home and $1,500 per month in temporary support. She was 51 and would incur tax penalties if she used her share of the pension plans before the age of 59 1/2. Mike reported that his income was $25,521 per month.

Before the hearing, Genise filed a motion in limine in which she asserted that the language "until" was inserted into the stipulation for judgment as a result of a mistake or "trickery." She asked the trial court to grant relief from that part of the judgment based on mistake. (Fam. Code, § 2122, subd. (e).)[2] Her attorney declared that he was unaware that "counsel . . . had inserted language in the Judgment . . . which purports to limit the Court's jurisdiction to award long term spousal support 'until Wife's release from incarceration.'" He declared, "It was my oversight not to have caught that unauthorized, never discussed nor agreed upon restriction." He argued, "That the subject provision was inserted into the Stipulated Judgment is the essence of trickery." He

---

[2] All statutory references are to the Family Code.

4

declared that he and Genise "relied upon" the agreement at the settlement conference that the issue of spousal support was simply "reserved."

Mike submitted copies of correspondence between counsel in which they exchanged drafts of the stipulation for judgment and agreed to some changes. None of the letters between counsel mention the reservation of jurisdiction, the date jurisdiction terminates, or the specific language: "until Wife's release."

At the July 26 hearing, the trial court concluded that jurisdiction expired and said, "I really do think I don't have jurisdiction to address the spousal support issue anymore because of the judgment providing the specific conditions under which that jurisdiction would end and I think it's ended." The court explained, "[T]his isn't a matter where a couple of pro. pers. were putting together the judgment. You're both experienced, skilled family law lawyers and it seemed to me, based on the evidence that was submitted, that the terms of that judgment were carefully negotiated, things were changed and that it was finally -- a final agreement was reached. So I'm loath to change anything at this point." The court denied Genise's request.

## DISCUSSION

We construe a marital settlement agreement that is incorporated into a stipulated judgment under the general rules governing the interpretation of contracts. (Civ. Code, § 1636; *In re Marriage of Hibbard* (2013) 212 Cal.App.4th 1007, 1013.) Where no extrinsic evidence is introduced, or the extrinsic evidence is not in conflict, we independently construe the agreement. (*In re Marriage of Simundza* (2004) 121 Cal.App.4th 1513, 1518.) Where competent extrinsic evidence is in conflict, we uphold any reasonable construction by the lower court. (*Stratton v. First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1084.)

The court's goal is to give effect to the parties' mutual intent. (*In re Marriage of Simundza*, *supra*, 121 Cal.App.4th 1513, 1518.) "[A] court must construe the judgment as a whole rather than separately considering its individual clauses." (*In re Marriage of Hibbard*, *supra*, 212 Cal.App.4th 1007, 1013) It must "consider the

5

circumstances when the parties signed the settlement agreement."  (*Ibid.*)  "When, through fraud, mistake, or accident, a written contract fails to express the real intention of the parties, such intention is to be regarded, and the erroneous parts of the writing disregarded."  (Civ. Code, § 1640.)  Although a contract has been reduced to writing by the parties, parol evidence is admissible to show fraud, accident or mistake.  (*Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 525.)

A court retains spousal support jurisdiction indefinitely after a lengthy marriage, unless an agreement or order specifically provides otherwise.  (§ 4336, subd. (a).)  The stipulated judgment did not specifically provide otherwise.  It provided that Mike would pay temporary support "so long as Wife remains incarcerated" (absent other agreement or order) and that the court would "reserve jurisdiction to award long-term spousal [support] until Wife's release from incarceration, either parties' death, the remarriage of Wife, the cohabitation of Wife, or modification or termination by further order of the Court, whichever occurs first."  The reasonable interpretation of this language, borne out by the circumstances and the parties' conduct, is that the hearing was to be held within a reasonable time after release.

If jurisdiction terminated the moment Genise was released from prison, it is doubtful the trial court could have conducted the hearing.  The time between notice of entry of judgment and Genise's release was a mere nine weeks.  Genise would have had to know the time of her release in advance and provide for her transportation to the court. Her attorney's declaration points out it takes six to eight hours to drive from the prison in Chowchilla to Santa Barbara.  Whether released at 10:00 a.m. or 10:00 p.m., Genise could not have arrived at court on time, even if released on a weekday.  But she was released on a Sunday.  Moreover, Mike was out of the country and could not be reached on the date of Genise's release.  If ambiguous, the language in a marital settlement agreement should be construed in favor of support.  (*In re Marriage of Ousterman* (1996) 46 Cal.App.4th 1090, 1096.)  Genise urged the court to construe a possible "ambiguity . . . against the scrivener."

6

The trial court considered extrinsic evidence, but that evidence was not in conflict. There is no affidavit from Mike or his counsel and there is no extrinsic evidence that any party intended the court to lose jurisdiction to award long-term support the moment Genise was released from prison. That is not what the parties agreed to on the record at the settlement conference. They agreed long-term support would be resolved "when the wife is released from prison." Negotiations did not change this. Nothing in the correspondence exchanged by counsel suggests intent to terminate jurisdiction at the moment of Genise's release. Genise's counsel wrote about "bringing a Motion regarding modification of spousal support upon her release," drawing no protest from opposing counsel. Mike's counsel used the word "until" instead of "upon" in the stipulation for judgment, but there is no evidence of any discussion about the word. Genise's counsel declared that the restriction was "unauthorized, never discussed nor agreed upon." Genise declared, "That a Motion for permanent support had to be filed by any specific date or occurrence was never discussed." There is no contrary extrinsic evidence.

The parties' conduct after Genise's release from prison demonstrates they did not contemplate the hearing on the issue of long-term support would take place the day of her release. They agreed that the hearing that had been set three days after her release would be continued so that Mike could obtain the results of a vocational examination. Mike paid the vocational examiner $4,500 for tests on Genise that occurred more than six weeks after her release.

This case is unlike *In re Marriage of Carter* (1994) 26 Cal.App.4th 1024, 1030, in which a marital settlement agreement provided that the court could award support only until a specific date. The trial court in *Carver* had no jurisdiction to award support at a September 1992 hearing because the judgment "stated that the court reserved jurisdiction to award spousal support to either party until July 31, 1992." (*Ibid.*) The court could not hear a motion that was filed before July 31, but set for hearing after July 31, because "[t]he reservation of jurisdiction specified . . . that both the court's jurisdiction to award and the parties' right to receive spousal support terminated on July

7

31."  (*Ibid.*)  Here, after a 23-year marriage, the parties contemplated that long-term support, if any, would not begin until Genise's release from prison.  Genise requested support before she was released and the hearing went forward as soon as reasonably possible.  The trial court retained jurisdiction to award long-term spousal support.

Family law court is a court of equity.  (*In re Marriage of Boswell* (2014) 225 Cal.App.4th 1172, 1174.)  It would be inequitable to so narrowly construe the word "until" when the parties' conduct and action evince no such interpretation.

### DISPOSITION

The order is reversed.  The case is remanded to the trial court to hear Genise's motion for long-term spousal support on the merits.  Genise shall recover costs on appeal.

CERTIFIED FOR PUBLICATION.

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

8

Donna D. Geck, Judge

Superior Court County of Santa Barbara

_____

Miles T. Goldrick; Ferguson Case Orr Paterson LLP, Wendy C Lascher for Appellant.

Diane M. Matsinger; Wilson & Pettine, Paul A. Pettine, Ann Canova for Respondent.