Filed 10/20/21  Marriage of Hamelynck CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re the Marriage of ERIN  and ANDREW HAMELYNCK. | |
| ERIN EUN YOON, | D078030 |
| Appellant, | |
| v. | (Super. Ct. No. 18FL008502C) |
| ANDREW HAMELYNCK, | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Truc T. Do, Judge.  Affirmed.

Law Offices of Natasha Roit and Natasha Roit for Appellant.

Bickford Blado & Botros and Andrew J. Botros for Respondent.

Erin Eun Yoon (Wife) and Andrew Hamelynck (Husband) entered into a marital settlement agreement (MSA), which was incorporated into the judgment of dissolution, that contains the following child support provision:

> "Monthly child support is ordered at $2,177 per month . . . , payable by Husband to Wife, effective September 1, 2019. . . .  As further child support, Husband shall also pay 7% of any bonuses . . . he receives incident to his employment at [employer]."

The MSA has a similar spousal support provision with a 20 percent bonus component.

Husband received bonuses of $103,700 in February 2019 and $48,500 in June 2019, but maintained they were not subject to the MSA's support provisions because he received them before the support provisions took "effect[ ] September 1, 2019." Wife requested that the family court construe the effective date as applying only to the monthly base support and, thus, to order that Husband pay a percentage of these bonuses as child and spousal support. Focusing on the effective date and the parties' use of the future tense "receives" in the phrase "any bonuses . . . he receives," the family court ruled the provisions do not apply to bonuses Husband received before September 1, 2019.

Wife appeals, seeking our de novo interpretation of the bonus provisions. For reasons we will explain, we likewise conclude the MSA's support provisions do not apply to the February and June 2019 bonuses. Accordingly, we affirm.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND
### A. Separation and Settlement

Husband and Wife married in July 1997, and separated in July 2018 when Wife filed a petition for dissolution. They had one daughter (Daughter) and one son (Son) during the marriage.

In November 2018, the court ordered Husband to pay guideline child support of $3,542 per month ($1,328 for Daughter, $2,214 for Son), and guideline spousal support of $3,959 per month. The court based its guideline

---

[1]    As we will explain in part III of this opinion, although we conclude Wife's appeal lacks merit, we do not believe it is dilatory or frivolous. Accordingly, we deny Husband's motion for sanctions.

calculations on Husband's monthly income of $19,316, and Wife having no monthly income.

In February 2019, Husband received a $103,700 bonus from his employer (Employer).  Husband disclosed this bonus to Wife on May 7 or May 8.

On May 8, the parties successfully mediated disputes regarding child and spousal support, and other dissolution issues.  They documented their settlement in an enforceable stipulation (Stipulation), which the parties intended to replace with a formalized MSA.

The Stipulation addressed child support for Son (but not Daughter, who had turned 18 a few months earlier), in pertinent part, as follows:

> "Monthly Child Support shall be paid pursuant to Exhibit E [showing guideline support of $2,177], effective September 1, 2019.  Husband shall also pay, as further child support, 7 percent of any bonuses . . . he receives incident to his employment with [Employer]."[2]

The Stipulation similarly addressed spousal support, in pertinent part, as follows:

> "Monthly Spousal Support shall be paid pursuant to Exhibit E [showing guideline support of $3,470], rounded up to $3,500, effective September 1, 2019.  Husband shall also pay, as further spousal support, 20 percent of any bonuses . . . he receives incident to his employment with [Employer]."

In June 2019, Husband received a $48,500 bonus from Employer.  He did not disclose it to Wife.

---

2     "Exhibit E" is a DissoMaster report the mediator prepared and attached to the Stipulation.  It was based on Husband having monthly income of $19,901, and Wife having monthly income of $2,080.

The parties eventually formalized their settlement in the MSA, which took effect on October 29, 2019.[3] The MSA contains child and spousal support provisions substantially similar to those in the Stipulation.

Regarding child support, paragraph 4.B. of the MSA states in pertinent part:

> "Monthly child support is ordered at $2,177.00 per month for [Son], payable by Husband to Wife, effective September 1, 2019.  (Calculated pursuant to Exhibit E)  As further child support, Husband shall also pay 7% of any bonuses . . . he receives incident to his employment at [Employer]."[4]

Regarding spousal support, paragraphs 5.A. and 5.B. of the MSA state in pertinent part:

> "A.  Monthly spousal support is ordered at $3,500 per month, payable from Husband to Wife, effective September 1, 2019.  (Calculated pursuant to Exhibit E, rounded up by agreement of the parties.)

---

[3]     The MSA provides that it is "effective as of the last-dated signature of a party."  Wife signed the MSA on October 25, 2019; Husband signed it October 29, 2019.

[4]     Paragraph 4.B. of the MSA states in full:  "*Monthly child support is ordered at $2,177.00 per month for [Son], payable by Husband to Wife, effective September 1, 2019.*  (Calculated pursuant to Exhibit E)  *As further child support, Husband shall also pay 7% of any bonuses* and 7% of his separate property interest in restricted stock units *he receives incident to his employment at* [*Employer*].  This 7% does not apply to the community property portion of any restricted stock units awarded to Husband.  In the event that any child support payment provided in this Agreement becomes due and interest is accrued thereon at the legal rate, payment of such interest shall be treated as additional child support and excluded from the recipient's taxable income.  The Court reserves jurisdiction over child support."  (Italics added.)

4

"B.  As further spousal support, Husband shall also pay 20% of any bonuses . . . he receives incident to his employment with [Employer]."[5]

On November 6, 2019, the family court entered a judgment of dissolution incorporating and attaching the MSA.

### B.  Wife's Initial Request to Modify Support

In December 2019 and January 2020, disputes arose between the parties regarding their implementation of various MSA provisions.  These disputes did *not* include Husband's nonpayment of support from the $103,700 bonus he received in February 2019 and disclosed in May 2019.

In February 2020, Wife filed a request for order (RFO) "increasing child support based on changed circumstances not disclosed by [Husband] during MSA negotiations and entry of Judgment."  Wife based the RFO on her

---

[5]     Paragraphs 5.A. and 5.B. of the MSA state in full:

"A.  *Monthly spousal support is ordered at $3,500 per month, payable from Husband to Wife, effective September 1, 2019.*  (Calculated pursuant to Exhibit E, rounded up by agreement of the parties.)  Husband shall also keep Wife on his health insurance until this divorce is final, and, thereafter, shall cooperate with Wife, if requested, in obtaining alternative insurance, including COBRA benefits.  Husband shall have no financial obligations required as part of this cooperation.

"B.  *As further spousal support, Husband shall also pay 20% of any bonuses* and 20% of his separate property interest in restricted stock units *he receives incident to his employment with* [*Employer*].  This 20% does not apply to the community property portion of any restricted stock units awarded to Husband.  The spousal support specified in this paragraph shall be payable until the death of either party, remarriage of Wife, or further order of the court to modify based on changed circumstances.  Spousal support payable herein shall be nonmodifiable for 3 years from the signing of the MSA, provided Husband is employed by [Employer].  In the event [Employer] is acquired by, merges with, or is taken over by a successor entity, Husband's responsibilities under this paragraph continue.  The Court reserves jurisdiction over spousal support."  (Italics added.)

5

"belie[f] . . . that at the time of entering into the MSA, [Husband] had secured a promotion in his employment with a significant increase in wages/bonuses," which "was not disclosed during the divorce proceedings or ever." Wife also requested that the court order Husband to produce documents regarding his income and bonuses, and impose sanctions of $7,500.

About four months later, in June 2020, Wife's counsel filed a supplemental declaration clarifying that Wife was also requesting support under the MSA's child and spousal support provisions based on the $103,700 bonus that Husband received in February 2019 (which he disclosed in mediation) and the $48,500 bonus he received in June 2019 (which Wife only learned of by subpoenaing Employer's records).

Husband opposed Wife's RFO, explaining that although he had technically received a promotion at work, it was really more of a lateral move that resulted in a pretax raise of only $500 per month. Husband also explained his view that the February and June 2019 bonuses were not subject to the MSA's support provisions because those provisions state they are "effective September 1, 2019," *after* he received the bonuses.

Husband gave notice that he intended to present live testimony at the RFO hearing. Wife objected, arguing the facts were undisputed and the MSA "speaks for itself."

The court heard Wife's RFO on June 22, 2020. When Wife did not attend the hearing, the court indicated it was inclined to continue the matter so Husband could cross-examine Wife, observing that "the dispute does not seem as simple as [Wife's counsel] might believe it is." Wife's counsel then clarified that Wife was no longer "seeking child support based on changed circumstances" regarding Husband's employment situation; rather, she was seeking only a percentage of Husband's bonuses, "which are provided for in

6

the [MSA] itself." The court responded that it would only "address[ ] the relief requested in the pleadings," and Wife would therefore need to file an amended RFO if she intended to pursue this new bonus claim.

The court continued the hearing for about one month, and granted Wife leave to amend her RFO.

### C. Wife's Amended RFO to Enforce the MSA

As contemplated, Wife filed an amended RFO seeking "enforcement of" the MSA's child and spousal support provisions. Wife sought child support of $10,654 and spousal support of $30,440 (7 percent and 20 percent, respectively, of Husband's $103,700 February 2019 bonus and $48,500 June 2019 bonus). Wife also sought interest on the unpaid support, and sanctions of $7,500.

Wife argued Husband's interpretation of the MSA as applying only to bonuses received after September 1, 2019 was inconsistent with the MSA and "illogical." She denied she had "simply waived tens of thousands of dollars from 2019 bonuses," "[n]or could [she] have waived child support as a matter of policy."

Husband opposed Wife's amended RFO, reiterating his view that the MSA's support obligations did not take effect until September 1, 2019 (after he received both bonuses). He clarified he was not asserting a waiver theory; rather, he simply maintained the MSA recognized the bonuses were his "separate property earnings."

Husband also asserted he "made multiple concessions during mediation upon the assumption that [his] bonuses until September 1, 2019 were [his] separate property." For example, he (1) allowed Wife to receive the $43,500 value of his half of a life insurance policy; (2) agreed he would use his half of the proceeds from the sale of the marital residence to contribute $59,011.18

7

to Daughter's college savings fund and $86,446.87 to Son's college savings fund; and (3) agreed Wife's share of his retirement accounts would be valued as of the date of the mediation, with Wife benefiting from any subsequent appreciation, while being insulated against any subsequent depreciation.

In reply, Wife argued Husband's interpretation of the MSA failed to account for the fact the support provisions state they apply to "*any* bonuses" (italics added), not to those earned after September 1, 2019. She also argued that regardless of what Husband called it, he was in fact asserting a waiver theory, which Wife denied she intended.

### D. Court's Ruling

The court heard Wife's amended RFO on July 23, 2020, and took the matter under submission. Later that day, the court issued its findings and order after hearing.[6]

The court denied Wife's amended RFO to enforce the MSA's support provisions, with the following reasoning:

> "The plain language of the MSA—both the effective date of September 1, 2019 and the future tense of the word 'receives' in both [the child and spousal support] paragraphs[—]make clear that Husband is not required to pay support on bonuses he received in February and June of 2019. The . . . provisions are prospective, not retroactive, by the parties' agreement."

### II. DISCUSSION

Wife contends the family court erred by construing the MSA's support provisions as applying only to bonuses Husband received beginning September 1, 2019. We disagree.

---

[6] The court later amended its ruling, nunc pro tunc to July 23, to correct a misstatement regarding procedural history not at issue here.

## A. Interpretation Principles

" 'Marital settlement agreements incorporated into a dissolution judgment are construed under the statutory rules governing the interpretations of contracts generally.' " (*In re Marriage of Simundza* (2004) 121 Cal.App.4th 1513, 1518 (*Simundza*).)

"We interpret a contract to give effect to the mutual intention of the parties at the time they formed the contract. [Citations.] We discern the parties' intention based on the written contract alone, if possible, but may also consider the circumstances under which the contract was made and its subject matter. [Citations.] We consider the contract as a whole, and interpret contested provisions in their context, not in isolation, with the aim of giving effect to all provisions, if doing so is reasonably possible. [Citations.] [¶] In interpreting a contract, we give the words their ordinary and popular meaning, unless the parties or usage have given the words a specialized or technical meaning. [Citations.]" (*Camacho v. Target Corp.* (2018) 24 Cal.App.5th 291, 306; see *Simundza*, *supra*, 121 Cal.App.4th at p. 1518.)

"When, as here, no conflicting extrinsic evidence is offered of an interpretation as to which the language of a marital settlement agreement is reasonably susceptible, and the facts are otherwise undisputed, we apply the unambiguous contract terms to the undisputed facts as a matter of law." (*In re Marriage of Iberti* (1997) 55 Cal.App.4th 1434, 1439; see *In re Marriage of Rosenfeld & Gross* (2014) 225 Cal.App.4th 478, 488 ["because no extrinsic evidence was considered, we are not bound by the trial court's construction and interpret the terms of the MSA de novo"].)

## B. Analysis

Husband and Wife agree the family court did not consider any extrinsic evidence in construing the MSA and, therefore, our review is de novo. Applying this standard, we conclude the MSA's child and spousal support provisions apply only to bonuses Husband received beginning September 1, 2019.

The MSA's child and spousal support provisions start by specifying an amount of monthly support that Husband must pay to Wife "effective September 1, 2019." Each provision also states that Husband must pay, "[a]s further . . . support," a specified percentage "of any bonuses . . . he receives" from Employer. When read together, the September 1, 2019 effective date, use of the term "*further . . . support*" (italics added), and use of the future tense "bonuses he . . . *receives*" (italics added) strongly suggest the parties intended that the MSA's support provisions apply only prospectively to Husband's bonuses beginning September 1, 2019.

The parties' use of the future tense "receives" is of greater import in light of the undisputed fact that Wife knew when she signed the MSA (as well as the substantially similar Stipulation) that Husband had already *received*—past tense—a $103,700 bonus. Indeed, Wife knew about this bonus for more than a year before first asserting it was subject to the MSA's support provisions.[7] This suggests Wife understood and intended that the MSA

---

[7] Specifically, Wife acknowledges Husband disclosed the $103,700 bonus in May 2019, yet the appellate record shows she did not argue it was subject to the MSA's support provisions until July 2020, when her counsel submitted a supplemental declaration in support of Wife's first RFO.

10

would not apply to bonuses Husband received before September 1, 2019.[8] (See *Oceanside 84, Ltd. v. Fidelity Federal Bank* (1997) 56 Cal.App.4th 1441, 1449 ["the conduct of the parties after the execution of the contract, and before any controversy arose, may be considered in order to attempt to ascertain the parties' intention"].)

Wife asserts that the fact each bonus provision appears in a separate sentence than the September 1, 2019 effective date—and, indeed, that the spousal support bonus provision appears in a separate *paragraph*—reflects the parties' intent that the effective date not apply to the bonus provisions. We are not persuaded. First, each bonus provision begins by referring to the bonus-based support as "*further* . . . support" (italics added), thereby suggesting the parties intended that the base and bonus support provisions be read together. Second, Wife's interpretation fails to account for the bonus provisions' use of the future tense "receives." Finally, other parts of the spousal support provision indicate the parties intended that both paragraphs be construed together.[9]

---

[8] While Wife makes much of the fact that Husband admittedly did not disclose the June 2019 $48,500 bonus, his nondisclosure was not the basis for relief in her amended RFO; rather, the nondisclosure was relevant only as an interpretive aid in construing the MSA. In that respect, we are satisfied that the prospect of obtaining percentages of a $103,700 bonus provided Wife sufficient incentive to assert a claim under her interpretation of the MSA without the additional incentive of obtaining percentages of a $48,500 bonus.

[9] For example, the spousal support paragraph with the bonus provision (paragraph 5.B.) also states that "[t]he spousal support specified in *this paragraph* shall be payable until the death of either party, remarriage of Wife, or further order of the court . . . ." (Italics added.) The parties almost certainly intended that this provision also apply to the paragraph with the monthly support provision (5.A.), thus indicting they intended the monthly and bonus support provisions—including the effective date—be read together.

11

Wife also contends the bonus provisions' use of the word "any" in the phrase "*any* bonuses . . . [Husband] receives incident to his employment at [Employer]" (italics added) indicates the parties intended that the bonus provisions apply regardless of when Husband receives a bonus. But in light of the other language suggesting the bonus provisions apply only prospectively, we conclude the parties intended "any" to refer to the *type* of bonus, not its *timing*.

Apart from the MSA's express language, Wife argues that interpreting the bonus provisions as allowing Husband to exclude certain bonus income from his support obligations constitutes, "in essence," a waiver of child support that "may not be waived as a matter of public policy." (Bolding and capitalization omitted.) We disagree. The MSA expressly provides for monthly child support of $2,177, plus 7 percent of bonuses Husband receives beginning September 1, 2019. This is not a *waiver* of child support.

Instead, this construction of the MSA would render it, at most, an agreement allowing Husband to provide below-guideline child support. Family Code section 4065 expressly allows such agreements, provided the parties declare that certain criteria are met. (See Fam. Code, § 4065, subd. (a).)[10] The MSA contains party declarations that mirror nearly verbatim

---

[10] Family Code section 4065, subdivision (a) states: "Unless prohibited by applicable federal law, the parties may stipulate to a child support amount subject to approval of the court. However, the court shall not approve a stipulated agreement for child support below the guideline formula amount unless the parties declare all of the following: [¶] (1) They are fully informed of their rights concerning child support. [¶] (2) The order is being agreed to without coercion or duress. [¶] (3) The agreement is in the best interests of the children involved. [¶] (4) The needs of the children will be adequately met by the stipulated amount. [¶] (5) The right to support has not been assigned to the county pursuant to Section 11477 of the Welfare and Institutions Code and no public assistance application is pending."

12

those required by statute.[11]

More generally, Husband showed he agreed to terms that favored Wife and Son—including contributing $86,446.87 to Son's college savings fund from Husband's share of the proceeds from the sale of the marital residence—based on the understanding his February and June 2019 bonuses were not subject to the MSA's bonus provisions. Additionally, until the MSA's support provisions took effect on September 1, 2019, Husband remained under court order to pay monthly child support of $3,542, which included $1,328 for Daughter, even though she turned 18 in February 2019 and presumably graduated from high school around June 2019 (the record shows she was attending college the next academic year).

In sum, the bonuses Husband received from Employer in February and June 2019 were not subject to the MSA's bonus provisions, which the parties intended would become "effective September 1, 2019." Accordingly, the family court properly denied Wife's amended RFO.

### III. HUSBAND'S MOTION FOR SANCTIONS

Husband moves for an award of $10,000 in sanctions against Wife and her appellate counsel for filing a dilatory and frivolous appeal.

An appellate court may award sanctions "[w]hen it appears . . . that the appeal was frivolous or taken solely for delay." (Code Civ. Proc., § 907; see *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 646 (*Flaherty*); *In re Marriage*

---

11    Paragraph 4 of the MSA states: "A. The parties have been fully informed of their rights concerning child support, including without limitation, the rights set forth in California Statewide Uniform Child Support Guidelines. [¶] . . . [¶] F. The order is being agreed to without coercion or duress. This agreement is in the best interest of the minor child and his needs will be adequately met by this stipulation. [¶] G. The right to child support has not been assigned to the county pursuant to §11477 of the Welfare and Institution Code and no public assistance is pending."

*of Gong & Kwong* (2008) 163 Cal.App.4th 510, 516.)  An appeal is "frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*Flaherty*, at p. 650.)  "The first standard is tested subjectively.  The focus is on the good faith of appellant and counsel.  The second is tested objectively.  [Citation.]  'While each of the above standards provides *independent* authority for a sanctions award, in practice the two standards usually are used together "with one providing evidence of the other." ' "  (*Gong & Kwong*, at p. 516.)

Applying these standards, although we ultimately conclude Wife's appeal lacks merit, we do not believe, nor do we believe "any reasonable attorney would agree that the appeal is *totally and completely* without merit." (*Flaherty*, *supra*, 31 Cal.3d at p. 650, italics added.)  Nor does it appear from the fact that Wife was the party seeking a monetary recovery that she brought this appeal "solely for delay." (Code Civ. Proc., § 907.)  Accordingly, we deny Husband's motion for sanctions.

## IV.  DISPOSITION

The order is affirmed.  Wife to pay Husband's costs on appeal. Husband's motion for sanctions is denied.

HALLER, Acting P. J.

WE CONCUR:

O'ROURKE, J.

GUERRERO, J.