Filed 8/19/21  Betuel v. Luma Pictures CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JONATHAN BETUEL, | B297030 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC638231) |
| v. | |
| LUMA PICTURES, INC., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Affirmed.

Jasper Law and Bernard C. Jasper for Plaintiff and Appellant.

Brown, Neri, Smith & Khan, Ethan J. Brown, Jill R. Glennon and Rowennakete P. Barnes for Defendant and Respondent.

Plaintiff Jonathan Betuel and defendant Luma Pictures, Inc. reached a settlement of their claims regarding Betuel's partial ownership of Luma, in which the parties agreed that Luma would purchase Betuel's shares in the corporation for an amount to be determined by a valuation expert. Betuel now appeals from the trial court's order approving the valuation. He argues that the court did so pursuant to terms that were not in the parties' settlement agreement, and therefore abused its discretion. We disagree and affirm. However, we deny Luma's request for attorney fees incurred in connection with this appeal.

## FACTUAL AND PROCEDURAL HISTORY

### I.    Complaint and Settlement Agreement

Betuel was a co-founder of and shareholder in Luma, an entertainment production company. In October 2016, Betuel filed a complaint against Luma and several individuals, alleging claims related to the termination of his employment and the running of the corporation.

The court held a mandatory settlement conference on September 12, 2017. At that time, the parties[1] entered into a stipulation regarding settlement, reciting that they had reached a "full and final settlement of all claims arising from the events described in the complaint," stating that the court could dismiss the case without prejudice, and requesting that the court retain jurisdiction to enforce the settlement pursuant to Code of Civil

---

[1] The parties to the settlement agreement included plaintiff Betuel, defendant Luma, and individual defendant Payam Shohadai, Luma's president. Shohadai is not a party to this appeal.

Procedure section 664.[2]  Accordingly, the minute order from the settlement conference stated that the parties entered into a settlement and the court dismissed the case without prejudice.

The written settlement agreement provided that Luma agreed to purchase all stock and equity interests in Luma held by Betuel, and the parties would "undertake to agree on an independent appraiser to perform a fair market value determination" of the shares.  If the parties could not agree to an expert, they would each submit proposed experts and any objections to the court for decision no later than October 18, 2017. The expert "will be requested to provide a final valuation report within 90 days of appointment or as soon thereafter as practicable.  Once the independent expert's report is submitted to the Parties, within 15 days, the Parties may make objections and the Court will rule on such objections.  The decision of the Court on the valuation report will be final."  The settlement agreement also provided, "If any party to the Agreement commences any action arising out of this Agreement including, but not limited to, any action to enforce or interpret the Agreement, the prevailing party in such action shall be entitled to recover its reasonable attorneys' fees and other expenses incurred in such action."

## II.    Selection of Valuation Expert

In October 2017, pursuant to the settlement agreement, both parties submitted proposed expert valuation firms to the court.  Betuel proposed as experts the firms of FTI Consulting and Salem Partners.  Luma proposed the firms of Duff & Phelps and Houlihan Lokey.  The parties informed the court that

---

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

because they could not reach an agreement on an expert, the terms of the settlement agreement provided that the court should select the expert from the nominees.

Each party submitted objections to the other party's proposed experts. Betuel also submitted a response to Luma's objections. Luma filed an unopposed ex parte application on December 20, 2017, citing the term of the settlement agreement providing that the court should select a valuation expert within seven days of the parties' submissions, and requesting that the court appoint an expert or set a hearing on the matter. On December 22, 2017, the court granted the ex parte application and selected Houlihan Lokey (Houlihan) as the expert.

## III. Completion of Report and Submission of Stipulations

At a status conference on January 10, 2018, the court set deadlines for the completion of the valuation report, followed by filing of objections/oppositions and replies by the parties, and scheduled oral argument on the report for May 25, 2018.

On May 18, 2018, Luma filed a motion pursuant to section 664.6[3] to enforce the settlement agreement. As of that date, the expert report was not complete, and Luma contended that Betuel had "obstructed the process" of assisting the valuation by failing

_____

[3] Section 664.6 provides, "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."

4

to pay his portion of the valuator's fee and disputing the scope of the valuation. Luma requested that the court issue an order "establishing firm deadlines and an expedited procedure for raising disputed issues with the court."

Although the valuator had not yet issued its report, the court held a status conference on May 25, 2018, the date previously set for oral argument on the report. Luma's counsel was not present. The court conferred with Betuel's counsel regarding the status of the uncompleted valuation report and issued an order to show cause why the case should not be dismissed for noncompliance with the court's prior deadlines.[4]

Betuel filed an opposition to the motion to enforce the settlement. He argued that the motion was unnecessary and moot, since he had paid the outstanding portion of the valuator's fee and the parties had resolved an issue regarding the scope of the valuation. He further contended that the settlement agreement had not been breached and did not require enforcement.

At the June 13, 2018 hearing on Luma's section 664.6 motion, the court denied the motion. The court resolved the

---

[4] Only Betuel's counsel was present for the hearings on January 10 and May 25, 2018; both times, the court ordered Betuel to give notice following the hearing. Luma later informed the court that it was not aware of either hearing and did not receive any notice from Betuel. Thus, Luma was also unaware of the deadlines set by the court at the January 2018 hearing. Luma later told the court that it discovered the existence of these hearings and the court's orders when reviewing the case docket on another issue. The court ultimately discharged the order to show cause.

parties' dispute over the valuation date to be used by the expert, setting that date as June 30, 2018. The court ordered the expert to serve the valuation report on counsel by October 1, 2018, ordered the parties to file objections by October 15, 2018, and set oral argument for October 26, 2018. On September 21, 2018, the court issued a minute order continuing the oral argument date on the court's own motion to November 16, 2018.

The parties submitted a joint stipulation on October 19, 2018 (first stipulation). They stated that the valuator was unable to complete the report by October 1, and stipulated to extend the deadline by five weeks from the date of the stipulation. The court signed the stipulation and order, continuing the due date for the valuation report to November 30, the objection deadline to December 14, and the oral argument to January 4, 2019.

Houlihan submitted its report on November 30, 2018, in compliance with the deadline. The parties submitted a second stipulation on December 14, 2018 to amend the briefing schedule (second stipulation). They stated that after Houlihan submitted the expert report, the parties "requested an in-person meeting with the valuator to clarify ambiguities in the report and to resolve the Parties [*sic*] questions." The parties also agreed that any objections to the report "would be informed by a meeting with the valuator." The court signed the stipulation and order, continuing the due date for submission of objections to January 4, 2019 and oral argument to January 18, 2019.

The parties submitted a third stipulation on January 14, 2019 to amend the briefing schedule (third stipulation). They informed the court that the in-person meeting with the valuator occurred on January 7, 2019. The court signed the stipulation and order, continuing the deadline to submit objections to

6

January 22, 2019 and the oral argument to February 15, 2019. The court further indicated in its minute order and in the signed order that there would be no further continuances.

The parties submitted a fourth stipulation to the court on January 22, 2019 (fourth stipulation), in which they agreed that the valuator "should have the opportunity to consider their comments and objections to the report and to amend [the] valuation report in response, if warranted, before the final report is presented to the court." They stipulated that the parties would provide comments and objections to the valuator by January 22, 2019, the valuator would provide them with a final report on February 12, 2019, the parties would submit the final report along with any objections and comments to the court by February 25, 2019, and the oral argument would be set on March 15, 2019 or the next available court date. On January 24, 2019, the court issued a minute order denying the stipulation and proposed order, noting that it had granted "multiple continuances" and citing to its January 14, 2019 order that there would be no further continuances.

The parties filed a joint ex parte application "for a final continuance" of the valuation schedule on January 29, 2019. They argued that the fourth continuance[5] was necessary to allow the valuator "the opportunity to consider the Parties [*sic*] objections in writing and include a response in its final report." The parties asserted that their third stipulation had not anticipated "Houlihan's review of the comments and did not

_____

[5] The ex parte application and supporting declaration erroneously asserted that the parties had requested two, rather than three, prior continuances.

7

afford adequate time for Houlihan to issue a final report," and that their proposed amendment would "provide the Court with the best information to consider any remaining objections the Parties may have." They further stated that they had already provided their objections to the valuator and "do not expect there will be any further delays."

The court held a hearing on the ex parte application on January 29, 2019, at which defense counsel appeared. The court denied the application, ordering the valuator to file any "supplemental papers, objections, and/or responses" by February 8, 2019 and allowing the parties until the same date to file "objections and/or additional comments." The oral argument remained set for February 15, 2019.

## IV. Approval of Report

Luma submitted the valuator's revised report to the court on February 8, 2019. The same day, Luma submitted its response to the report. According to Luma, after meeting with Houlihan in person on January 7, 2019, the parties submitted comments and objections to Houlihan on January 22. Houlihan issued supplemental questions and requests for information from Luma on February 1, and Luma responded on February 4. Houlihan then provided its revised valuation to the parties on February 8. Luma raised several objections to the valuation report that it believed benefitted Betuel, but stated that it was "nonetheless prepared to accept its conclusion"; it therefore urged the court to approve Houlihan's valuation.

Betuel submitted his objections to the valuation on February 14, 2019, the day before the scheduled hearing. He attached a report prepared by FTI Consulting, which criticized the valuation prepared by Houlihan and proposing a "much

8

simpler and conventional approach" to the valuation. Betuel argued that given the "glaring problems" with the valuator's opinion, the court should ignore the valuation provided by Houlihan and "determine Luma's valuation on its own reasonable basis."

The court heard oral argument regarding the valuation report on February 15, 2019. The court found that Betuel's objections were untimely. The court took the matter under submission.

On February 19, 2019, the court issued a written order approving the expert valuation report. The court noted that it had granted several continuances "to accommodate the parties and the appraiser," and "allow the parties to review and respond to the report." The court also noted that while Luma filed its response on February 8, Betuel did not timely file any objections. Instead, Betuel belatedly lodged copies of his objections and accompanying evidence "without first seeking permission of the court," and the court did not receive them until the morning of the hearing. The court stated that at the hearing, the court permitted Betuel's counsel "to summarize his arguments against the final report. However, it was clear that he was merely attempting to summarize FTI's comments."

The court found that the valuation report was "thorough, well supported, and well reasoned. The report relies upon data provided by the parties as well as other objective and reliable data." Moreover, the court overruled Betuel's objections as untimely and because his "attempt to rely on the analysis of FTI Consulting, a firm previously rejected by this Court, is clearly outside the terms of the settlement agreement."

9

Betuel timely appealed from the court's February 19, 2019 order approving the valuator's report.[6]

## DISCUSSION

Betuel contends the trial court erred in denying the parties' fourth request for a continuance of the schedule for submission of the valuation report and their objections thereto. Specifically, he argues that by refusing the parties' request for additional time and ordering the simultaneous submission of the revised report and any objections, the court materially altered the terms of the settlement agreement and deprived him of his right to a fair hearing.[7] Luma contends that the trial court acted well within

[6]We review the order approving the valuator's report as a final judgment entered after a stipulated dismissal pursuant to the terms of a settlement agreement. (§ 904.1, subd. (a)(1); see also *Steinman v. Malamed* (2010) 185 Cal.App.4th 1550, 1554-1555.)

[7]In his opening brief, Betuel also argued that the trial court lacked subject matter jurisdiction to enforce the settlement agreement. However, in his reply brief he stated: "Betuel abandons his argument that the trial court lacked jurisdiction to enforce the settlement agreement. Betuel has reconsidered that argument in light of the absence of a reporter's transcript of the proceedings following the mandatory settlement conference, and believes this court must presume that the trial court granted a request from the parties to retain jurisdiction to enforce the settlement following the dismissal of the action." Despite this unequivocal abandonment, Betuel's counsel incredibly suggested during oral argument that he had only *partially* conceded the issue related to whether the parties *requested* that the court retain jurisdiction under section 664.6. Conversely, he claimed that Betuel had not abandoned the portion of the argument regarding whether the trial court *accepted* such jurisdiction. This

10

the boundaries of the agreement and exercised its inherent authority to manage the proceedings before it. Luma also argues that it is entitled to recover attorney fees as the prevailing party under the settlement agreement.

We conclude that the trial court did not err in approving the valuation report. However, we deny Luma's request for attorney fees, as Luma has not established it was the prevailing party in the litigation.

## I.  The Court's Approval of the Valuation Report

Betuel contends the trial court erred by imposing terms outside of the settlement agreement when it denied the parties' fourth stipulation and subsequent ex parte application, and then ordered the valuator to file any "supplemental papers, objections, and/or responses" by February 8, 2019 (10 days later) and set the same deadline for the parties to file "objections and/or additional comments." He argues that under the settlement agreement, the parties should have had 15 days after the valuator's last submission to file their objections with the court, and the court lacked the authority to order otherwise. This argument is not supported by the express language of the settlement agreement or a reasonable interpretation of that agreement based on the subsequent conduct of the parties.

---

contention is directly contradicted by Betuel's concession in his reply brief that "this court must presume that the trial court granted a request from the parties to retain jurisdiction to enforce the settlement." Moreover, Betuel advanced no arguments in his reply brief regarding subject matter jurisdiction. As such, Betuel's attempt to resurrect an argument he previously abandoned is meritless.

11

"Section 664.6 was enacted to provide a summary procedure for specifically enforcing a settlement contract without the need for a new lawsuit." (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809 (*Weddington*).) A court acting under section 664.6 may "receive evidence, determine disputed facts, and enter the terms of a settlement agreement as a judgment." (*Id.* at p. 810; see also *Fiore v. Alvord* (1985) 182 Cal.App.3d 561, 566.) Section 664.6's "'express authorization for trial courts to determine whether a settlement has occurred is an implicit authorization for the trial court to interpret the terms and conditions to settlement.'" (*Skulnick v. Roberts Express, Inc.* (1992) 2 Cal.App.4th 884, 889, citing *Fiore v. Alvord, supra,* 182 Cal.App.3d at p. 566.)

However, "nothing in section 664.6 authorizes a judge to *create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon." (*Weddington*, *supra*, 60 Cal.App.4th at p. 810, emphasis in original.) "[T]he trial court is under a duty to render a judgment that is in exact conformity with an agreement or stipulation of the parties. 'If interpretation of a stipulation is in order the rules applied are those applied to the interpretation of contracts. [Citations.] It is not the province of the court to add to the provisions thereof [citations]; to insert a term not found therein [citations]; or to make a new stipulation for the parties.'" (*Machado v. Myers* (2019) 39 Cal.App.5th 779, 792 (*Machado*), quoting *Jones v. World Life Research Inst.* (1976) 60 Cal.App.3d 836, 840; see also *Leeman v. Adams Extract & Spice, LLC* (2015) 236 Cal.App.4th 1367, 1375 ["'[W]hat the court could not do in considering approval of a settlement under . . . section 664.6 was to add to or modify an express term of the settlement.'"].)

12

We affirm the factual determinations made by the trial court if they are supported by substantial evidence. (*Weddington, supra,* 60 Cal.App.4th at p. 815; *Skulnick v. Roberts Express, Inc., supra*, 2 Cal.App.4th at p. 889.) We review the trial court's legal conclusions de novo. (See *Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175.)

In addition, the court has inherent power "'to insure the orderly administration of justice'" (*Walker v. Superior Court* (1991) 53 Cal.3d 257, 266), including the power to "provide for the orderly conduct of proceedings before it" (§ 128, sub. (a)(3)). We uphold the court's exercise of its broad discretion, such as the determination whether to grant a continuance, absent an abuse of that discretion. (See *Mahoney v. Southland Mental Health Associates Medical Group* (1990) 223 Cal.App.3d 167, 170 ["unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power"]; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 823.)

Betuel acknowledges the court's discretion to "provide for the orderly conduct of proceedings before it" (§ 128, sub. (a)(3)), but contends the court abused that discretion when it imposed a schedule outside the terms of the settlement agreement. We disagree. The court's order was consistent with the plain language of the settlement agreement. "A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts." (*Weddington, supra*, 60 Cal.App.4th at p. 810; see also *In re Marriage of Hibbard* (2013) 212 Cal.App.4th 1007, 1013 (*Hibbard*).) "'The fundamental goal

13

of contractual interpretation is to give effect to the mutual intention of the parties. [Citation.] If contractual language is clear and explicit, it governs.'" (*People v. Shelton* (2006) 37 Cal.4th 759, 767.) Here, the agreement provided that the expert would "be requested to provide a final valuation report within 90 days of appointment or as soon thereafter as practicable. Once the independent expert's report is submitted to the Parties, within 15 days, the Parties may make objections and the Court will rule on such objections." In other words, the agreement expressly contemplated a three-step procedure: first, submission of the expert report to the parties; second, objections by the parties within 15 days of that submission; and finally, the court's ruling.

The parties signed the agreement in September 2017 and the court appointed Houlihan as the expert in December 2017. Pursuant to the schedule agreed upon in the first stipulation, Houlihan submitted its report on November 30, 2018. In their second and third stipulations, which the court approved, the parties did not seek to continue the time for submission of the report, but only the time for submission of their objections and the subsequent hearing date to allow them to meet with the valuator in person. Thus, at the time the court denied the fourth stipulation on January 24, 2019 and ordered the parties to submit objections by February 8, 2019, they had received the benefit of almost two months longer to make objections than the 15 days contemplated under the agreement. The court's refusal to grant the parties additional time did not deviate from the terms of the agreement.

Betuel's reliance on *Machado, supra,* 39 Cal.App.5th 779 does not assist his argument. In *Machado*, a dispute between

14

neighbors, the trial court granted a section 664.6 motion to enforce the parties' stipulated settlement and later entered judgment. (*Id.* at pp. 787-788.) The Court of Appeal held that the trial court acted properly in finding that the parties had entered into an enforceable agreement and granting the motion to enforce the settlement. But the trial court erred in entering a judgment as proposed by the plaintiffs, as it "was different from the terms of the parties' stipulated settlement agreement." (*Id.* at p. 792.) In particular, the judgment omitted any reference to multiple terms contained in the settlement agreement, including the parties' obligation to enter a license agreement, the plaintiffs' "obligation to remove certain solar panels, the parties' agreement to each bear their own attorney fees and costs, the agreement that the court would retain jurisdiction under section 664.6 to enforce the terms of the settlement agreement, and the mutual release of claims contemplated to occur upon the completion of the settlement terms." Additionally, "[o]ther settlement agreement terms appeared in the judgment with modifications." (*Id.* at p. 793.) Thus, because the judgment entered was materially different from the parties' settlement agreement, the trial court exceeded its authority under section 664.6 to enter judgment "'pursuant to the terms of the settlement.'" (*Id.* at p. 794, italics omitted; see also *Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1185 [reversing judgment that "states some of the settlement terms, but omits others"].)

Here, by contrast, the court acted in conformity with the parties' express agreement. It selected an expert, resolved a dispute as to the valuation date, and granted several requests from the parties to extend the submission schedule. Once the expert submitted the report and long after the 15 days to make

15

objections had elapsed, the court set a final deadline for the parties to submit any further objections or comments, and then considered those objections before approving the valuation.[8]

Betuel also argues that the court misinterpreted the settlement agreement when it found that the "final" valuation report was submitted on November 30, 2018. He contends the parties' conduct during the valuation process demonstrated that they agreed the report would not be "final" within the meaning of the settlement agreement—thereby triggering the 15-day deadline to submit objections—until they "were satisfied they had been given sufficient opportunity to influence the expert." He did not raise this argument below prior to the court's approval of the valuation report, and has therefore forfeited it. (See *Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 830 ["'[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court.'"]; see also *In re Marriage of Eben–King & King* (2000) 80 Cal.App.4th 92, 117 ["It is well established that issues or theories not properly raised or presented in the trial court may not be asserted on appeal, and

---

[8] At oral argument, Betuel's counsel for the first time asserted that the trial court erred by rejecting Betuel's objections to the valuation report on "procedural" grounds. Specifically, he argued that the court dismissed the objections out of hand because they were based on opinions proffered by FTI. "We need not consider points raised for the first time at oral argument." (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 232, fn. 6; see also *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1554, fn. 9.)

16

will not be considered by an appellate tribunal."].)

Even if Betuel had properly raised this issue below, we would reject it on the merits. As noted above, where the "contractual language is clear and explicit, it governs. On the other hand, '[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it.' "The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties.""" (*Hibbard, supra,* 212 Cal.App.4th at p. 1013, quoting *People v. Shelton, supra,* 37 Cal.4th at p. 767; accord, *In re Marriage of Simundza* (2004) 121 Cal.App.4th 1513, 1518 ["'The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting.'"].)

Even assuming the settlement was ambiguous, there is no indication in the record that at the time they entered into the agreement, the parties contemplated anything other than the three-step process outlined in the written agreement. Indeed, the first three stipulations recognized the same process, with submission of the expert's report on November 30, 2018, followed by a deadline for the parties' objections, followed by a hearing. It was only in the parties' fourth stipulation, submitted over a year after the settlement, that the parties proposed additional procedures—first, providing additional comments and objections to the valuator, then the valuator's submission of a revised

17

report, and finally submission of the revised report and any remaining objections to the court. In urging the court to approve the new schedule, they argued that they had not previously anticipated needing time for Houlihan to review their comments and issue a revised report, and they desired to "provide the Court with the best information to consider any remaining objections the Parties may have." They also proposed a deadline for objections that was 13 days after the revised submission by the expert, rather than the 15 days called for in the original agreement. As such, substantial evidence supports the trial court's determination that the expert's submission of the settlement agreement in November 2018 was "final" within the meaning of the settlement agreement, and that the later submission of a revised report did not reset the 15 day deadline for objections. Moreover, several months had elapsed since the submission of the expert's report, during which the parties had already exchanged additional comments and objections with the expert. At this point, the court was well within its authority to cut off any further continuances, set a deadline for any further submission by the expert and for objections by the parties, and move forward with its review of the valuation report. As such, the trial court did not err in denying the parties' fourth stipulation and, ultimately, in approving the valuation report.

## II.    Attorney Fees

Luma contends it is the prevailing party in this appeal, and therefore entitled under the settlement agreement to recover its reasonable attorney fees. We disagree.

"Section 1032 is the fundamental authority for awarding costs in civil actions. It establishes the general rule that '[e]xcept as otherwise expressly provided by statute, a prevailing party is

18

entitled as a matter of right to recover costs in any action or proceeding.'" (*Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1108, quoting § 1032, subd. (b).) Section 1033.5 specifies the "items . . . allowable as costs under Section 1032," including attorney fees when authorized by contract. (§ 1033.5, subd. (a)(10).)

Further, under Civil Code section 1717, where a written contract expressly provides for the award of attorney fees, the prevailing party in an action under or relating to the contract is entitled to recover its fees. (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 876.) Thus, "[w]hen a party obtains a simple, unqualified victory by completely prevailing on or defeating all contract claims in the action and the contract contains a provision for attorney fees, [Civil Code] section 1717 entitles the successful party to recover reasonable attorney fees. . . . [Citation] If neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees." (*Scott Co. v. Blount, Inc., supra,* 20 Cal.4th at p. 1109, citing *Hsu v. Abbara, supra,* 9 Cal.4th at p. 876.)

Here, the settlement agreement provided that if any party "commences any action arising out of this Agreement . . . the prevailing party in such action shall be entitled to recover its reasonable attorneys' fees." Luma did not seek attorney fees in the trial court and does not contend it was the "prevailing party" below. Instead, it argues that this appeal constitutes an "action arising out of" the settlement agreement. Luma therefore urges that we look only to its success on appeal to find that it is the prevailing party and entitled to attorney fees.

19

We cannot do so.  California case law is "clear that [Civil Code] section 1717 does not support an award to the prevailing party on appeal, but only to the prevailing party in the lawsuit." (*Wood v. Santa Monica Escrow Co.* (2009) 176 Cal.App.4th 802, 808 (*Wood II*).)  "[T]he trial and appeal are treated as parts of a single proceeding.  The party prevailing on appeal is not necessarily the prevailing party for the purposes of awarding contractual attorney fees." (*Id*. at p. 806.)  Instead, "the prevailing party must be determined by who prevails overall in the lawsuit." (*Ibid*.)  For example, in *Snyder v. Marcus & Millichap* (1996) 46 Cal.App.4th 1099, 1101 (*Snyder*), the trial court entered judgment for the plaintiff, awarding compensatory damages, as well as damages for emotional distress and punitive damages.  The defendant prevailed in an appeal challenging some, but not all, of the damages awarded.  (*Ibid*.)  The defendant then sought attorney fees under Civil Code section 1717 as the prevailing party on appeal.

The trial court denied the request and the Court of Appeal affirmed, reasoning that the defendant "was not the prevailing party in the lawsuit" because the net judgment remained in the plaintiff's favor.  (*Snyder, supra*, 46 Cal.App.4th at p. 1102; see also *Wood II, supra,* 176 Cal.App.4th at p. 806 [denying attorney fees for party who prevailed on appeal because "the prevailing party must be determined by who prevails overall in the lawsuit"]; *Mustachio v. Great Western Bank* (1996) 48 Cal.App.4th 1145, 1150 [finding the plaintiff was the "party prevailing on the contract," although her damages were reduced on appeal].)

As such, we reject Luma's attempt to carve out this appeal as an independent "action" in which it prevailed, separate from the underlying lawsuit and settlement.  Moreover, the trial court made no finding of a prevailing party below, nor is it clear based on the court's approval of the valuation report which party, if either, would qualify as prevailing for the purpose of awarding attorney fees.  Notably, the court previously denied Luma's motion to enforce the settlement agreement.  Under these circumstances, Luma cannot establish it was the prevailing party.

We agree with Betuel that *Starpoint Properties, LLC v. Namvar* (2011) 201 Cal.App.4th 1101, is distinguishable.  There, the trial court entered judgment in favor of the plaintiffs pursuant to a settlement agreement.  (*Id*. at p. 1103.) Defendants appealed, challenging the validity of the trial court's entry of judgment, but the appellate court dismissed the appeal as untimely.  (*Id*. at pp. 1104, 1107.)  The court also granted the plaintiffs' request for attorney fees incurred in connection with the appeal, based on a provision in the settlement agreement awarding fees to the prevailing party.  (*Id*. at p. 1111.)  Although the court did not directly address the issue, it is evident from the circumstances of the case that the plaintiffs in *Starpoint* were the prevailing parties in the underlying litigation as well as on appeal, and were therefore entitled to attorney fees under the settlement agreement.

Here, by contrast, the trial court did not enter judgment expressly in favor of one party, nor has Luma argued it was the prevailing party below.  As such, Luma's success on appeal, alone, does not trigger the attorney fee provision of the settlement agreement.

21

**DISPOSITION**

The order approving the valuation is affirmed.  Luma is awarded its costs on appeal, but we deny Luma's request to include attorney fees as recoverable costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.


We concur:


WILLHITE, ACTING P.J.


CURREY, J.